UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVON LAMONT MILLER,

      Petitioner,                             Civil Action No. 20-cv-12625

                                            HON. MARK A. GOLDSMITH

v.

MICHAEL BURGESS,

      Respondent,

_____/

**OPINION & ORDER (i) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, (ii) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (iii) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Davon Lamont Miller, (Petitioner), confined at the Oaks Correctional Facility in Manistee, Michigan, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for two counts of armed robbery, Mich. Comp. Laws § 750.529; one count of first-degree home invasion, Mich. Comp. Laws § 750.110a(2); one count of carrying a weapon with unlawful intent, Mich. Comp. Laws § 750.226; and one count of possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b. For the reasons that follow, the Court denies Petitioner's petition for writ of habeas corpus with prejudice.

## I. BACKGROUND

Petitioner was convicted after a jury trial in Michigan's Wayne County Circuit Court in which he was tried with co-defendant Myron Gregory Jessie. This Court recites verbatim the relevant facts upon which the Michigan Court of Appeals relied, which are presumed correct on habeas review under 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

Jessie and Miller were charged with offenses related to the home invasion and armed robbery of Jessie's neighbors, Daniel and Terry McNamara, on May 23, 2017, in Detroit.  The prosecution's theory was that Jessie was the linchpin of this criminal episode because he used his personal relationship with the McNamaras to induce them into opening their door for Miller and a third participant, Delond Matlock,[] knowing that Miller and Matlock intended to commit a robbery.  The victims testified that Jessie knocked on their front door and engaged Daniel in a conversation about Daniel mowing someone's lawn.  Jessie then left and entered a white car with two other men.  Moments later, Miller knocked on Daniel's front door, had a similar exchange with Daniel, and asked if he could return and use the side door.  Miller then walked away toward the white car, although Daniel did not see whether he entered the car.  Shortly thereafter, Miller and Matlock knocked on the side door of the house and again engaged Daniel in another similar lawn-related conversation.  Matlock then pointed a pistol at Daniel and Miller demanded Daniel's rings.  Matlock ordered Daniel into the basement, where Matlock held both Daniel and Terry at gunpoint and demanded their gold and wedding rings.  Miller remained upstairs and searched the premises.  Matlock stated that he would have to kill the McNamaras because they had seen his face, but when he attempted to fire the gun, it jammed.  Daniel managed to retrieve his own gun, which he fired at Matlock as Matlock fled. Miller fled from the house as well, but left a sweatshirt behind.  Both Daniel and Terry identified Jessie as the person who had originally approached the house, and from photographic lineups they identified Matlock and Miller as the robbers.

At trial, Jessie and Miller both denied involvement in the offense.  The sweatshirt left at the scene contained Miller's DNA as well as that of two other unknown individuals (not Jessie or Matlock). DNA analysis of bloodstains found at the scene revealed Matlock's DNA, with Miller and Jessie excluded as possible contributors.

People v. Miller, No. 335738, 2018 WL 1936018, *1–2 (Mich. Ct. App. Apr. 24, 2018) (footnote omitted).  The Michigan Court of Appeals and the Michigan Supreme Court affirmed Petitioner's conviction on appeal. Id.; lv. den. 919 N.W.2d 254 (Mich. 2018).

Petitioner filed his petition in 2021.  (Dkt. 1).  The Court held the case in abeyance so that Petitioner could return to the state courts to exhaust additional claims. Miller v. Macauley, No. CV 20-12625, 2021 WL 1696397 (E.D. Mich. Apr. 29, 2021).   Petitioner filed a post-conviction motion for relief from judgment with the trial court, which the court denied.  People v. Miller, No. 16-005653-02-FC (Wayne Cty. Cir. Ct., June 30, 2020) (Dkt. No. 12-12).  The Michigan Court of Appeals vacated the order and remanded the matter to the trial court to reconsider the motion for

relief from judgment because the judge failed to address some of the issues in the motion.  People v. Miller, No. 356094 (Mich. Ct. App. May 26, 2021).[1]  On remand, the judge addressed all of Petitioner's issues but again denied him post-conviction relief.  People v. Miller, No. 16-005653-02-FC (Wayne Cty. Cir. Ct., Dec. 2, 2022) (Dkt. No. 12-14).   The Michigan appellate courts subsequently denied Petitioner's application for leave to appeal.  People v. Miller, No. 364721 (Mich. Ct. App. June 3, 2023) (Dkt. No. 12-18, PageID.1482); lv. den., 996 N.W.2d 451 (Mich. 2023).  This Court subsequently reopened the case and permitted Petitioner to file an amended habeas petition.  (Dkt. No. 9).

Petitioner seeks habeas relief on the following grounds: (i) trial counsel was ineffective for failing to adequately argue that co-defendant Donald Matlock could no longer invoke his Fifth Amendment right against self-incrimination because he had pleaded guilty and had been sentenced and could thus testify on Petitioner's behalf, (ii) Petitioner's right to a unanimous jury verdict was violated because only eleven jurors voted to convict, (iii) the judge committed misconduct by referring to the complainants as victims, (iv) the judge committed misconduct by noting that the victims had positively identified Petitioner in court, (v) trial counsel was ineffective for failing to investigate the case or interview witnesses and for failing to adequately explain the plea bargain offer to Petitioner, and (vi) appellate counsel was ineffective for failing to raise these claims on Petitioner's appeal of right.

---

[1] Neither of the parties provided the Court with a copy of the Michigan Court of Appeals' order from May 26, 2021.  However, the order is referenced in the Michigan Court of Appeals' subsequent order denying Petitioner's post-conviction appeal following the remand.  Rule 5 materials at PageID.1482 (Dkt. 12-18).

## II.  LEGAL STANDARD

Title 28 of the United States Code Section 2254(d), as amended by The Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A decision of a state court is "contrary to" clearly established federal law if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if

the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405–06 (2000).  An "unreasonable

application" occurs when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." Id. at 409.  A federal habeas court may not "issue the writ

simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly."  Id. at 410–11.  "[A]

state court's determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v.

Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

To obtain habeas relief in federal court, a state prisoner must show that the state court's rejection

of the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103. [2]

### III. ANALYSIS

### A.  Ineffective Assistance of Trial Counsel (Claims 1 and 5)

Petitioner alleges in his first and fifth claims that he was denied the effective assistance of trial counsel because (i) trial counsel failed to argue that the Fifth Amendment right against self-incrimination no longer applied to co-defendant Delond Matlock after he pleaded guilty and had been sentenced, so as to allow trial counsel to call Matlock as a defense witness (Claim # 1), (ii) trial counsel failed to adequately investigate the case and interview the prosecution witnesses; trial counsel's failures lead to a constructive denial of counsel (Claim # 5), and (iii) trial counsel's ineffectiveness in investigating the case lead him to give inadequate advice concerning a plea bargain offer to Petitioner, causing Petitioner to reject the plea offer (Claim # 5).

To establish ineffective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-part test. Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, the defendant must demonstrate that, considering all the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id.  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. Id. at 689.  In other

---

[2] Respondent contends that Petitioner's claims are procedurally defaulted because he raised them for the first time in his post-conviction motion for relief from judgment and he failed to show cause for failing to raise the issues in his appeal of right, as well as prejudice, as required by Michigan Court Rule 6.508(D)(3).  It is unnecessary to address the procedural default issue because the claims are without merit. See Post v. Bradshaw, 621 F.3d 406, 426 (6th Cir. 2010) ("We need not address the procedural default issue, however, as the claim fails even under de novo review"); Brown v. McKee, 231 F. App'x 469, 477 (6th Cir. 2007) ("Like the district court, however, we need not consider the question of procedural default because the claim can be dismissed as meritless.").

words, a defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.  Id.  Second, the defendant must show that such performance prejudiced his defense.  Id. at 687.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id., at 694.

In his first claim, Petitioner alleges that trial counsel was ineffective for failing to call co-defendant Delond Matlock as a witness for the defense after Matlock's attorney had indicated to the trial court and defense counsel at Matlock's sentencing on August 23, 2016 that she was invoking Matlock's Fifth Amendment right against self-incrimination.  9/19/16 Jury Trial Tr. at PageID.436–437 (Dkt. No. 12-6).  Petitioner's counsel subsequently attempted to have Matlock's statement to the police admitted into evidence, but the judge denied the request because it was hearsay.  Id. at PageID. 451–452.  Petitioner argues that Matlock no longer had the right to invoke his Fifth Amendment privilege against self-incrimination because he had pleaded guilty and been sentenced prior to Petitioner's trial.  Petitioner claims that Matlock would testify that Petitioner was not involved in the armed robbery, because he had made such a statement to the police at the time of his arrest.  Petitioner has attached to his petition an affidavit from Matlock dated November 26, 2019, in which Matlock avers that he wanted to testify that Petitioner was innocent but that his attorney prevented him from doing so.  Matlock Aff. at PageID.222–223 (Dkt. No. 8).

A defendant's Fifth Amendment privilege against self-incrimination may be asserted up until "the sentence has been fixed and the judgment of conviction has become final."  Mitchell v. United States, 526 U.S. 314, 326 (1999).  Petitioner argues that once Matlock was sentenced, he no longer had the right to invoke his Fifth Amendment privilege against self-incrimination, nor could his attorney do so for him.

In rejecting this claim on post-conviction review, the trial judge noted that Matlock was sentenced only a month before Petitioner's trial.  At the time of Petitioner's trial, Matlock could have still filed a motion to withdraw his guilty plea or an application for leave to appeal.  The judge concluded that Matlock could still assert his privilege against self-incrimination because the time period for him to move to withdraw the plea or to file an appeal had not expired under Michigan law.  Thus, trial counsel was not ineffective for failing to call Matlock as a witness. 12/2/22 Order, PageID.1233 (People v. Miller, No. 16-005653-02-FC, * 4 (Wayne Cty. Cir. Ct., Dec. 2, 2022) (Dkt. No. 12-14)).

A defendant's Fifth Amendment privilege against self-incrimination regarding transactions for which one has been convicted continues until time to appeal has expired or until his conviction has been affirmed on appeal.  See United States v. Duchi, 944 F.2d 391 (8th Cir. 1991); see also United States v. Brown, 52 F. App'x 612, 614 (4th Cir. 2002) ("a defendant may invoke his Fifth Amendment privilege in any subsequent proceeding related to the underlying conviction until that conviction becomes final, including any appeals."); United States v. Gjerde, 110 F.3d 595, 603 (8th Cir. 1997) ("At the time of Gjerde's trial, Richard Field was not available as a witness.  He had pled guilty to the conspiracy and had asserted his Fifth Amendment right against self-incrimination pending his appeal."); Bruner v. Foster, 345 F.R.D. 454, 457 (E.D. Mich. 2023) (A conviction is not "final," such that a witness may not assert their Fifth Amendment privilege against self-incrimination, if an appeal is pending).  Michigan law is in accord on this point.  See People v. Spicer, No. 281173, 2010 WL 934212, at *2 (Mich. Ct. App. Mar. 16, 2010) (Defendant's Sixth Amendment right to compulsory process was not violated when a party to the same crime invoked his right against self-incrimination and did not testify at defendant's trial. Based on the party's invocation of his Fifth Amendment right, the party could not be compelled to

testify at the defendant's trial.  Moreover, the time for the party to appeal his plea regarding the crime had not yet expired); see also, People v. Barnes, No. 339431, 2019 WL 3849435, at *4 (Mich. Ct. App. Aug. 15, 2019) (co-defendant who had pleaded guilty to second-degree murder charge could still invoke his Fifth Amendment right against self-incrimination where, at the time of trial, he could have still filed a motion to withdraw his guilty plea under Mich. Ct. R. 6.310(C) or a delayed application for leave to appeal under Mich. Ct. R. 7.205).

As stated, Matlock had been sentenced only a month before Petitioner's trial.  Under Mich. Ct. R. 6.310(C) or Mich. Ct. R. 7.205, Matlock had six months from his sentencing to either move to withdraw his plea or to file an appeal with the Michigan Court of Appeals.  Because Matlock's appeal period had not expired at the time of Petitioner's trial, he could properly invoke his Fifth Amendment privilege against self-incrimination.

A second possible basis for Matlock's attorney to invoke his Fifth Amendment privilege against self-incrimination to prevent him from testifying at Petitioner's trial was to prevent Matlock from being charged with perjury or obstruction of justice.  See United States v. Smith, 245 F.3d 538, 543 (6th Cir. 2001).  Although Matlock initially told the police that Petitioner had no involvement in the robbery, the prosecutor at the time of Petitioner's trial indicated that Matlock had renounced his prior statement when he pleaded guilty and told the judge as part of the factual basis for his plea that Petitioner was inside the house at the time of the robbery.  9/19/16 Jury Trial Tr. PageID. 443–444 (Dkt. No. 12-6).  Although Respondent did not file a copy of Matlock's plea transcript with this Court, Petitioner has not rebutted that assertion by the prosecutor.  Because Matlock had inculpated Petitioner at his guilty plea, his counsel may have feared that Matlock could be charged with perjury if he offered exculpatory testimony at Petitioner's trial.

Finally, Petitioner argues that counsel should have attempted to call Matlock to testify at trial because he never personally invoked his Fifth Amendment rights, only his counsel had. Although the Fifth Amendment privilege not to testify against oneself is personal to the client, it can be invoked on a client's behalf by his or her attorney.  See United States v. Johnson, 752 F.2d 206, 211, n. 3 (6th Cir. 1985); see also United States v. Mayes, 512 F.2d 637, 649 (6th Cir. 1975) (stating that it is within the discretion of the trial judge to permit counsel for the witness to invoke the Fifth Amendment privilege against self-incrimination on his behalf).  Petitioner's argument lacks merit.

Since it was proper for Matlock's attorney to assert his Fifth Amendment privilege against self-incrimination and there were legitimate reasons for doing so, trial counsel was not ineffective in failing to present Matlock as a defense witness, particularly if he could have been charged with perjury had he testified.  See Davis v. Lafler, 658 F.3d 525, 537 (6th Cir. 2011) (trial counsel had valid reasons not to call co-defendant who had pleaded guilty as a defense witness when the prosecutor had threatened to charge him with perjury if he testified and counsel was concerned he would invoke his Fifth Amendment right to remain silent if called); see also Hill v. Klee, No. 1:16-CV-408, 2017 WL 6947806, at *10-11 (W.D. Mich. Dec. 15, 2017), report and recommendation adopted, No. 1:16-CV-408, 2018 WL 439010 (W.D. Mich. Jan. 16, 2018) (stating that Michigan Court of Appeals reasonably concluded that counsel not ineffective for failing to call co-defendant who had already been convicted as defense witness because she retained her right against self-incrimination while her appeal was pending); Moskowitz v. United States, No. 01 CIV.10644, 2002 WL 31119269, at *4 (S.D.N.Y. Sept. 24, 2002) (counsel  not ineffective for failing to call co-defendant who had pleaded guilty as defense witness, even though defendant claimed that the prosecutor delayed the co-defendant's sentence so that he could exercise his Fifth Amendment

privilege; even if the co-defendant had been sentenced prior to the defendant's trial, he could still exercise his Fifth Amendment privilege while pursuing his appeal).  Because of the foregoing, counsel was not ineffective in failing to succeed in calling Matlock as a defense witness.  Petitioner is not entitled to relief on his first claim.

In his fifth claim, Petitioner alleges first that he was constructively denied the assistance of trial counsel because his attorney failed to interview any of the prosecution witnesses prior to trial and thus failed to adequately investigate the case.  The Supreme Court has clearly established that the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice.  United States v. Cronic, 466 U.S. 648, 659 (1984).  The existence of certain structural defects in a trial, such as the deprivation of the right to counsel, requires automatic reversal of the conviction because it infects the entire trial process.  Brecht v. Abrahamson, 507 U.S. 619, 629–30 (1993).  The Supreme Court has routinely found constitutional error without any specific showing of prejudice to a defendant when counsel is either totally absent, or prevented from assisting the accused during a critical stage of the proceedings.  Cronic, 466 U.S. at 659, n. 25; United States v. Minsky, 963 F.2d 870, 874 (6th Cir. 1992). The Sixth Circuit has taught:

> The Supreme Court identified three situations where a defendant is entitled to this presumption: (1) the "complete denial of counsel," including situations where counsel was absent at a "critical stage" of the proceedings; (2) situations where defense counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing;" and (3) situations where "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate."

Fuller v. Sherry, 405 F. App'x 980, 985 (6th Cir. 2010) (citing Cronic, 466 U.S. at 659–60)).

Where defense counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing," there has been a constructive denial of counsel, and a defendant need not make a showing of prejudice to establish ineffective assistance of counsel.  Moss v. Hofbauer, 286 F. 3d

851, 860 (6th Cir. 2002) (quoting Cronic, 466 U.S. at 659).  However, for a presumption of prejudice to arise based on an attorney's failure to test the prosecutor's case, so that reversal based on ineffective assistance of counsel is warranted without any inquiry into prejudice, the attorney's failure to test the prosecutor's case "must be complete."  Bell v. Cone, 535 U.S. 685, 697 (2002).

The Supreme Court has described Cronic as creating only a "narrow exception" to the general rule in Strickland that "a defendant who asserts ineffective assistance of counsel must demonstrate not only that his attorney's performance was deficient, but also that the deficiency prejudiced the defense."  Florida v. Nixon, 543 U.S. 175, 190 (2004).  The Supreme Court admonished federal courts to be hesitant before concluding that a state court's failure to apply Cronic was contrary to clearly established law.  See Woods v. Donald, 575 U.S. 312, 317 (2015) (holding that none of the cases cited in Cronic as examples of a complete or constructive denial of counsel "dealt with circumstances like those present here"—namely, counsel's ten-minute absence during testimony that he had indicated to the court was irrelevant to his client—and therefore the Sixth Circuit erred in affirming Cronic-based habeas relief); Wright v. Van Patten, 522 U.S. 120, 125 (2008) (holding that no Supreme Court precedent "clearly establishes that Cronic should replace Strickland in this novel factual context"—an attorney's participation in a plea hearing via speaker phone).

Here, Petitioner's fifth claim is that trial counsel failed to subject the prosecutor's case to meaningful adversarial testing because counsel failed to personally interview any of the prosecution's witnesses and thus failed to adequately investigate the case.  This argument falls short.  As another judge in this district has noted, "a failure to interview witnesses and/or to investigate their version of events….is not a 'complete' failure to test the prosecution's case.  Such an alleged failure thus does not give rise to a presumption of prejudice under Cronic." Pouncy v.

Macauley, 546 F. Supp. 3d 565, 632 (E.D. Mich. 2021), reconsideration den., No. 13-CV-14695, 2021 WL 5494773 (E.D. Mich. Nov. 23, 2021).

The Sixth Circuit refused to apply the Cronic presumption of prejudice to a claim that defense counsel "failed to conduct any meaningful investigation" and failed to interview "crucial witnesses." Altman v. Winn, 644 F. App'x 637, 641–62 (6th Cir. 2016). Another judge in this district has also noted that: "An interview of prosecution witnesses is only one of several ways that an attorney might prepare for their trial testimony." Howard v. Warren, No. 2:19-CV-10316, 2020 WL 3036328, at * 9 (E.D. Mich. June 5, 2020). The Cronic standard typically does not apply to cases of inadequate pretrial preparation. Id. (citing Johnson v. Bradshaw, 205 F. App'x. 426, 432-33 (6th Cir. 2007)). In fact, "the Sixth Amendment does not require an attorney to interview a witness personally when he reasonably believes that doing so is unnecessary." Kendrick v. Parris, 989 F.3d 459, 471 (6th Cir. 2021).

As an initial matter, Petitioner has presented no evidence, either to the state courts or to this Court, to show that trial counsel did not interview the witnesses or otherwise adequately investigate the case. Conclusory allegations by a habeas petitioner, without any evidentiary support, do not provide a basis for habeas relief. See, e.g., Washington v. Renico, 455 F.3d 722, 733 (6th Cir. 2006) (stating that bald assertions and conclusory allegations do not provide a sufficient ground to warrant requiring an evidentiary hearing in a habeas proceeding); Workman v. Bell, 160 F.3d 276, 287 (6th Cir. 1998) (stating that conclusory allegations of ineffective assistance of appellate counsel do not warrant habeas relief). Petitioner's bare assertion that his trial counsel failed to adequately investigate his case by interviewing the witnesses is insufficient to support his ineffective assistance of counsel claim. See Starcher v. Wingard, 16 F. App'x 383, 388 (6th Cir. 2001).

Additionally, Petitioner failed to develop any argument to show actual prejudice, nor has he demonstrated that interviews would have provided any additional information that his lawyer might have used in cross-examination or that it would have in any other manner benefitted his defense. Howard, 2020 WL 3036328, at * 9.

Moreover, the cases of Phillips v. White, 851 F.3d 567, 579 (6th Cir. 2017) and Carter v. Bell, 218 F.3d 581, 595 (6th Cir. 2000), which Petitioner has cited, do not stand for the proposition that a mere failure to investigate or interview witnesses amounts to a constructive denial of counsel. In Phillips v. White, the Sixth Circuit presumed prejudice where, at a capital sentencing proceeding, counsel "neglect[ed] to make an opening statement; fail[ed] to investigate or present evidence, mitigating or otherwise; and offer[ed] a potentially off-putting and self-deprecating remark." Id. at 581. The net effect was that the "sentencing was a presentation by one party, not a contest between adversaries." Id. In Carter v. Bell, the Sixth Circuit found actual prejudice from counsel's deficient performance and did not presume prejudice based upon a failure to investigate or interview witnesses. See Carter, 218 F.3d at 600 (finding prejudice based upon quantity of mitigation evidence that counsel failed to present at capital sentencing). Because these cases do not stand for the proposition that a presumption of prejudice is warranted based upon counsel's failure to investigate and/or interview witnesses, Petitioner is not entitled to habeas relief on his claim. Pouncy v. Macauley, 546 F. Supp. 3d at 633.

In the present case, Petitioner was not constructively denied the assistance of trial counsel. Counsel actively participated in jury selection and voir dire, made an opening statement, cross-examined all of the prosecution's witnesses, made a motion for a directed verdict, and made a closing argument. Counsel's alleged errors did not rise to the level of the constructive denial of counsel, because counsel actively represented Petitioner at his trial. Moss, 286 F.3d at 860–62.

13

"Ultimately, an 'attorney's failure must be complete' rather than 'at specific points,' so it cannot be said that [defense counsel] failed to meaningfully challenge the prosecution's case through their actions." Moss v. Miniard, 62 F.4th 1002, 1012–13 (6th Cir. 2023) (quoting Bell, 535 U.S. at 697) (rejecting presumed-prejudice framework where defense counsel conducted a walk-through trial to expedite review on appeal). Petitioner fails to show that he was constructively denied the assistance of trial counsel.

Moreover, Petitioner is unable to show actual prejudice under the Strickland standard, so as to obtain habeas relief on his claim. An ineffective assistance of counsel claim based on the failure to investigate must be based upon more than mere speculation that further investigation would have been beneficial to the petitioner. See Hodge v. Haeberlin, 579 F.3d 627, 651 (6th Cir. 2009); Beuke v. Houk, 537 F.3d 618, 644 (6th Cir. 2008). Petitioner has offered no specific allegations as to what evidence or witnesses should have been investigated by counsel. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. See Workman v. Bell, 178 F.3d at 771. Petitioner is not entitled to relief on this claim because it is conclusory and unsupported.

In his fifth claim, Petitioner also alleges that trial counsel's failure to investigate the case caused him to reject a favorable guilty plea offer made to him. The Sixth Amendment right to counsel extends to the plea bargaining process. Lafler v. Cooper, 566 U.S. 156, 163 (2012); Missouri v. Frye, 566 U.S. 134, 143-44 (2012). Thus, a criminal defendant during plea negotiations is "entitled to the effective assistance of competent counsel." Lafler, 566 U.S. at 162 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). In the context of an ineffective assistance of counsel claim involving a defendant having rejected a plea offer from the prosecution, in order to establish that he or she was prejudiced by counsel's alleged deficiency, the defendant

must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court, i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances.  The defendant must also show that the court would have accepted its terms, and that the conviction or sentence, or both, would have been less severe than under the judgment and sentence that in fact were imposed.  Id., at 164.

> A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available.

Smith v. United States, 348 F.3d 545, 553 (6th Cir. 2003) (citing United States v. Day, 969 F. 2d 39, 43 (2d Cir. 1992)).

However, an attorney's failure to insist that his or her client accept a plea offer even if there is overwhelming evidence of guilty does not amount to constitutionally ineffective assistance.  Id. at 552.

The judge rejected Petitioner's claim on post-conviction review:

> Although defendant argues that he lacked sufficient information to make an informed decision on whether to accept a plea offer then; not his willingness to accept the offer today, the record shows the opposite.  MRE 401.  It shows that defense counsel went to great lengths to negotiate a plea offer for defendant and that counsel fully advised defendant of those offers.   However, defendant knowingly rejected those offers.  Defendant's attorney, David Cripps, placed on the record that he had conveyed to defendant the prosecutor's plea and that he rejected the offer.  8/9/16, 3–4.  In fact, at a pretrial before Judge Craig Strong, Cripps referenced "extensive plea negotiations" between him and the prosecutor's office. The prosecutor placed on the record that the court had made an offer to defendant, in accordance with Cobbs, where defendant would serve a prison sentence of 7 years to 20 years, consecutive to two years for the felon-firearm. 9/14/16, 3–4.
>
> [FN3: People v. Cobbs, 443 Mich. 276 [505 N.W.2d 208] (1993)]
>
> Finally, Cripps further stated that he advised defendant that, if he did not take the plea offer and was convicted as charged, the crime of first-degree home invasion

15

carried a discretionary consecutive sentence, something which the court confirmed it would not do if defendant accepted the plea offer. 9/14/16, 4–5. On the first day of the trial, Cripps made a record regarding his "extensive" plea negotiations with the prosecutor's office. However, after being made fully aware of these facts, defendant rejected the offers. 9/19/16, 4–7.

To assure that defendant's rejection of the plea offer was knowingly made, this Court placed him under oath and questioned him thoroughly. Defendant confirmed that counsel's statements to this Court were truthful and accurate, that he rejected the plea offers as counsel had represented to the court, and that he had no questions for the court or for counsel regarding the plea offers.

12/2/22 Order at PageID.1235–1236 (People v. Miller, No. 16-005653-02-FC, * 6-7 (Wayne Cty. Cir. Ct., Dec. 2, 2022) (Dkt. No. 12-14). The trial judge's rejection of Petitioner's claim was reasonable, precluding relief.

For one thing, the only evidence that Petitioner has offered in support of his claim that his trial counsel failed to investigate the case or give him adequate advice concerning the plea offer is his self-serving statement in his affidavit and in the pleadings he presented to the state court and this Court that trial counsel was ineffective concerning his advice about the plea offer. This in itself is a valid reason for the trial judge to have discredited the allegations and reject Petitioner's claim. See Lovell v. Duffey, 545 F. App'x 375, 381 (6th Cir. 2013).

Petitioner's claim fails for a second reason. In the context of an ineffective assistance of counsel claim involving a defendant having rejected a plea offer from the prosecution, to establish that he or she was prejudiced by counsel's alleged deficiency, the defendant must show that but for the ineffective advice of counsel there is a reasonable probability that defendant would have accepted the plea. Lafler v. Cooper, 566 U.S. at 164. In addition, a court, in determining the remedy for ineffective assistance of counsel relating to defendant's rejection of a plea offer, may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her action. Id. at 171.

The Supreme Court has indicated that "Although a defendant's proclamation of innocence does not relieve counsel of his normal responsibilities under <u>Strickland</u>, it may affect the advice counsel gives" with respect to the plea bargaining process. <u>Burt v. Titlow</u>, 571 U.S. 12, 22 (2013). Because there is no indication that Petitioner would have been willing to make out a factual basis of guilt, Petitioner failed to show that the plea would have been accepted and thus failed to show that he was prejudiced by counsel's alleged deficiencies with respect to the alleged plea offer, so as to establish that he was denied the effective assistance of counsel. <u>See</u>, <u>e.g.</u>, <u>Jackson v. United States</u>, 101 F. App'x 583, 586 (6th Cir. 2004). Petitioner's assertion of his innocence at trial demonstrates that he would not have pled guilty and was thus not prejudiced by trial counsel's alleged ineffectiveness. <u>Humphress v. United States</u>, 398 F.3d 855, 859 (6th Cir. 2005).

Finally, Petitioner's continued assertions of innocence before this Court on habeas review, after having been convicted, further supports the state courts' determination that Petitioner failed to show that he would have pleaded guilty, so as to establish that he was prejudiced by counsel's alleged deficiencies in failing to adequately explain the plea offers. <u>See</u> <u>United States v. Willoughby</u>, 144 F. Supp. 3d 935, 940 (N.D. Ohio 2015) (holding that defendant failed to show a reasonable probability he would have pled guilty absent counsel's alleged error in failing to explore the range of penalties with him, where defendant maintained his innocence on post-conviction review); <u>see also</u> <u>United States v. Brown</u>, 973 F. Supp. 530, 532 (D. Md. 1997) (no ineffective assistance of counsel where attorney allegedly failed to inform the defendant accurately of advisability of pleading guilty, given that the  defendant failed to show she would have acknowledged guilt before trial if given accurate advice, and sought a new trial and continued to profess her innocence in her motion for post-conviction relief). Petitioner is not entitled to relief on his fifth claim.

**B.  The Non-Unanimous Jury Verdict (Claim 2)**

Petitioner next claims that he was denied his right to a unanimous jury verdict, as evidenced by the fact that only 11 of the 12 jurors affirmed their guilty verdicts when polled.  Petitioner alleges that only 11 of the 12 jurors affirmed their verdict because when the trial court asked Juror #5 if that was and is his or her verdict, the transcript indicates that Juror #4 responded, rather than Juror #5.  Mot. to Lift Stay at PageID.197 (Dkt. 8).  Petitioner also notes that the court reporter attested to the accuracy of the transcript, so Juror #4 must have spoken for Juror #5.  Id. at PageID.196 n.9.

Petitioner's claim fails for two reasons.  First, the judge on post-conviction review found that all twelve jurors had affirmed that  the guilty verdict announced by the foreperson was their verdict.  See 12/2/22 Order at PageID.1233 (People v. Miller, No. 16-005653-02-FC, * 4 (Wayne Cty. Cir. Ct., Dec. 2, 2022).

In considering federal habeas petitions, a federal district court must presume the correctness of state court factual determinations, and a habeas petitioner may rebut this presumption only with clear and convincing evidence.  See Bailey v. Mitchell, 271 F. 3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1).  The presumption of correctness also "also applies to those implicit findings of fact that are inherent in [a state court's] resolution of conflicting evidence."  McPherson v. Woods, 506 F. App'x 379, 387 (6th Cir. 2012).  The state court judge, in rejecting Petitioner's claim, concluded that all twelve jurors had assented to the verdict.  In so doing, the judge implicitly rejected Petitioner's claim that Juror # 4 had assented to Juror # 5's verdict and the judge further implicitly found that the transcript's notation that Juror # 4 assented to Juror # 5's verdict was a typographical error.  Although the court reporter may have attested to the accuracy of the transcript, the nonstatutory presumption as to the correctness of every word in a

transcript was trumped by the presumption of correctness accorded to the state court's implicit factual finding that the portion of transcript indicating that one juror spoke for another during the polling of the jury was a typographical error.  See Hardaway v. Withrow, 305 F.3d 558, 563–64 (6th Cir. 2002) (Habeas relief was not warranted on petitioner's claim that state court judge erroneously instructed jury on involuntary manslaughter in a second-degree murder case, as indicated by transcript stating that state court judge said that jury asked for "copy of 2nd Degree Involuntary Manslaughter and I sent those in to them;" inasmuch as words "and voluntary" and "involuntary" are hard to distinguish, the nonstatutory presumption as to correctness of every word in transcript was superseded by a presumption of correctness accorded to state court factual findings under AEDPA, and jury's note was clearly asking for second degree murder and manslaughter instructions that it had already heard judge deliver orally).  The state court judge's factual determination is further buttressed by the fact that neither defense counsel nor Petitioner objected to the jury verdict as being non-unanimous at the time of the verdict.  See Kerr v. United States, No. 1:14- cv-1094, 2015 WL 13548159, at *4 (M.D.N.C. Dec. 31, 2015) (rejecting similar claim where the transcript showed the jury foreperson say "not guilty" as obvious typographical error and noting that the petitioner waited until the transcript was filed to raise the issue, rather than voicing concern immediately upon hearing such a statement at trial).

Even assuming that the jury was non-unanimous, Petitioner would not be entitled to habeas relief for a second reason.  At the time of Petitioner's conviction in 2016 and at the time that his conviction became final at the conclusion of his direct appeals in 2018, the United States Supreme Court had not yet held that the federal constitution requires a unanimous verdict.

A state prisoner collaterally attacking his conviction may not rely on a new constitutional rule announced after his conviction became final.  Teague v. Lane, 489 U.S. 288, 310-11 (1989).

The Supreme Court acknowledged that it is often difficult to determine when a case announces a new rule, and therefore did not attempt to define the spectrum of what may or may not constitute a new rule for retroactivity purposes.  Id. at 301.  However, a case is generally considered to announce a new rule has when the decision "breaks new ground," "imposes a new obligation on the States or the Federal Government," or "was not dictated by precedent existing at the time the defendant's conviction became final."  Id.  The "clearly established law" requirement contained in § 2254(d)(1) is a codification of the Supreme Court's anti-retroactivity rule enunciated in Teague, which requires federal habeas courts to deny habeas relief that was contingent upon a rule of federal law which had not been announced until after the state court conviction became final.  See Williams, 529 U.S. at 379–80.  "A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied."  ,Caspari v. Bohlen, 510 U.S. 383, 390 (1994).

At the time of Petitioner's trial in 2016 and at the time that his direct appeals concluded in 2018, the Supreme Court had allowed non-unanimous juries in state criminal trials.  Apodaca v. Oregon, 406 U.S. 404 (1972).  In 2020, the Supreme Court overruled their prior decision in Apodaca and held that a state jury must be unanimous to convict a criminal defendant of a serious offense.  Ramos v. Louisiana, 590 U.S. 83, 93 (2020).  However, the Supreme Court subsequently held that Ramos does not apply retroactively to cases on federal collateral review.  Edwards v. Vannoy, 593 U.S. 255, 258, 262 (2021).  Because Ramos was not the law in effect at the time that Petitioner's case became final in the state courts, he cannot avail himself of it to obtain habeas relief.  Petitioner is not entitled to habeas relief on his second claim.

**C.  Judicial Misconduct (Claims 3 and 4)**

Petitioner argues in his third and fourth claims that he was deprived of a fair trial because of judicial misconduct where (i) the judge referred to the complainants in this case as victims in front of the jury, and (ii) the judge indicated on the record that the victims had positively identified Petitioner as being their assailant after each of them had positively identified Petitioner in court.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. See Bracy v. Gramley, 520 U.S. 899, 904–05 (1997). The right to an impartial judge is a right whose deprivation a state prisoner may complain of in a federal habeas corpus proceeding. Tyson v. Trigg, 50 F.3d 436, 438 (7th Cir. 1995) (citing to Turner v. Ohio, 273 U.S. 510, 523 (1927); In Re Murchison, 349 U.S. 133 (1955)). Trial judges have a wide latitude in conducting trials, but they must preserve an attitude of impartiality and scrupulously avoid giving the jury the impression that the judge believes that the defendant is guilty. Harrington v. State of Iowa, 109 F.3d 1275, 1280 (8th Cir. 1997); Brown v. Palmer, 358 F. Supp. 2d 648, 657 (E.D. Mich. 2005).

However, in reviewing an allegation of judicial misconduct in a habeas corpus petition, a federal court must ask itself whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process. Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995); Brown v. Palmer, 358 F. Supp. 2d at 657. To sustain an allegation of bias by a state trial judge as a grounds for habeas relief, a habeas petitioner must factually demonstrate that during the trial the judge assumed an attitude which went further than an expression of his or her personal opinion and impressed the jury as being more than an impartial observer. Brinlee v. Crisp, 608 F.2d 839, 852–53 (10th Cir. 1979); Brown, 358 F. Supp. 2d at 657. A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the

defendant to a significant degree before habeas relief could be granted.  McBee v. Grant, 763 F.2d 811, 818 (6th Cir. 1985); Brown, 358 F. Supp. 2d at 657.

Finally, the pertinent question on habeas review is not whether the judge's questions or comments might constitute reversible error if the conviction was being reviewed on direct review but whether the state appellate court's rejection of the judicial misconduct claim was a reasonable or unreasonable application of clearly established federal law.  See, e.g., Allen v. Hawley, 74 F. App'x 457, 460-61 (6th Cir. 2003).  A trial judge may interject himself or herself "into the trial, speak to counsel, and question witnesses in order to clear up confusion regarding the evidence or aid in its orderly presentation."  United States v. Powers, 500 F.3d 500, 511 (6th Cir. 2007).

In his third claim, Petitioner alleges that the judge pierced the veil of judicial impartiality by referring to the complainants as the victims.  The state courts' rejection of this claim was reasonable. Habeas courts have time and again rejected habeas relief on similar claims where the prosecutor or the trial court referred to the complainants as "victims" before the verdict was announced.  See Garcia-Dorantes v. Warren, 769 F. Supp. 2d 1092, 1105 (E.D. Mich. 2011) (no misconduct where prosecutor referred to the complainants as victims); Carr v. Romanowski, No. 14- cv-11580, 2017 WL 5665956, at * 3 (E.D. Mich. Nov. 27, 2017) ("Here, the trial judge's use of the term 'victim' merely stated the obvious and was not an indication of bias.") (citing Medina v. Hornung, 106 F. App'x 539, 542 (9th Cir. 2004)).

Petitioner in his fourth claim alleges that the judge committed misconduct by affirming the in-court identification of Petitioner by the victims when he indicated that the record should reflect that the victims had identified Petitioner.  This claim is baseless.  "The trial court was merely making a record of what had occurred."  Lay v. Braman, No. 18-cv-666, 2021 WL 4129329, at *15 (W.D. Mich. Apr. 19, 2021) (rejecting an identical claim regarding identification on the

record).  The trial court did nothing more than what every trial court in the country does on a regular basis in nearly every criminal trial: noting for the record that the person to whom the witness pointed was, in fact, the defendant.

Finally, any prejudice from the judge's comments was also cured by the fact that the judge instructed the jury that his comments, rulings, and instructions were not evidence and further advised the jurors that if they believed that the judge had an opinion about how they should decide the case, that they should disregard that opinion and that they were the only judges of the facts. 9/19/16 Jury Trial Tr. PageID.1081 (Dkt. No. 12-9).  See Todd v. Stegal, 40 F. App'x 25, 28 (6th Cir. 2002).  Petitioner is not entitled to relief on his third or fourth claims.

### D.  Ineffective Assistance of Appellate Counsel (Claim 6)

Petitioner's sixth claim is that his appellate counsel was ineffective for failing to raise his other claims on his appeal of right.  The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel both on appeals of right, See Evitts v. Lucey, 469 U.S. 387, 396–97 (1985), and on first-tier discretionary appeals.  Halbert v. Michigan, 545 U.S. 605, 609–10 (2005).  Nonetheless, court-appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant.  Jones v. Barnes, 463 U.S. 745, 751 (1983). A habeas court reviewing an ineffective assistance of appellate counsel claim must defer twice: first to appellate counsel's decision not to raise an issue and second, to the state court's determination that appellate counsel was not ineffective.  Woods v. Etherton, 578 U.S. 113, 119 (2016) (per curiam).

Petitioner's first five claims do not entitle him to relief. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'"  Shaneberger v. Jones, 615

F.3d 448, 452 (6th Cir. 2010) (quoting Greer v. Mitchell, 264 F.3d 663, 676 (6th Cir. 2001)).  Thus, Petitioner is not entitled to relief on his sixth claim.

## IV.  CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484–85 (2000).  A petitioner satisfies this standard by demonstrating that. . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  Id. at 336–37.  Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right with respect to any of his claims.  Accordingly, a certificate of appealability is not warranted in this case.

Although this Court denies a certificate of appealability to petitioner, the standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the standard for certificates of appealability.  Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F. 3d 1113, 1115 (5th Cir. 1997)).  While

a certificate of appealability may be granted only if a habeas petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith.  Id. at 764–65; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits.  Foster, 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed in forma pauperis on appeal.

## V.  CONCLUSION

For the reasons stated above, the Court denies the petition for writ of habeas corpus.  The Court further denies a certificate of appealability.  The Court grants Petitioner leave to proceed IFP.

**SO ORDERED.**

Dated: August 6, 2025                       s/Mark A. Goldsmith
Detroit, Michigan                           MARK A. GOLDSMITH
                                            United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 6, 2025.

                                            s/Joseph Heacox
                                            JOSEPH HEACOX
                                            Case Manager